**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

| | | |
|---|---|---|
| DANIEL W. TAYLOR, | : | PRISONER CIVIL RIGHTS |
| ID # 0816052, | : | 42 U.S.C. § 1983 |
|     Plaintiff, | : | |
| | : | |
|     v. | : | |
| | : | |
| SGT. WESLEY CARMACK, | : | CIVIL ACTION NO. |
|     Defendant. | : | 1:08-CV-3262-CAP |

**ORDER AND OPINION**

Plaintiff, Daniel W. Taylor, presently confined in the Fulton County Jail in Atlanta, Georgia, has filed this pro se civil rights action. This matter is before the Court for consideration of Plaintiff's motions for summary judgment (Doc. 76), leave to file an amended complaint (Docs. 77, 92), and a pretrial conference (Doc. 90); and Defendant's motion for summary judgment (Doc. 82).

**I. MOTIONS FOR SUMMARY JUDGMENT**

**A.**    **Factual Summary**

On February 25, 2009, this Court conducted a 28 U.S.C. § 1915A frivolity screening and allowed Plaintiff's claims that Sergeant Wesley Carmack used excessive force against him during arrest and retaliated against him for filing this lawsuit to proceed. (Doc. 10). Plaintiff had made numerous additional allegations against

Sergeant Carmack and other defendants, all of which were dismissed.  Accordingly, for purposes of summary judgment, the Court will only address the factual allegations and arguments regarding the excessive force and retaliation claims that were allowed to proceed.

Plaintiff alleges that, on May 9, 2008, Sergeant Carmack, a Fulton County Deputy Sheriff who was working as a security officer at Plaintiff's apartment complex, kicked in Plaintiff's door, entered the apartment "without knocking, identifying himself or stating his purpose," and beat and shot Plaintiff.  (Doc. 9 at ¶ IV).  Plaintiff contends that "maintenance men" then assisted Sergeant Carmack in the beating.  (Id.).  Plaintiff also claims that, after filing this complaint, Sergeant Carmack threatened his life on two different occasions.  (Docs. 5, 7).  Plaintiff states that Sergeant Carmack "knows his job is on the line for what he did to me."  (Doc. 5).

In Plaintiff's declaration in support of his motion for summary judgment, he further alleges that when Sergeant Carmack, who was in plain clothes with his badge concealed and whom Plaintiff believed to be an intruder, forcibly entered Plaintiff's apartment, an alteration ensued, and Sergeant Carmack shot Plaintiff in the left foot.  (Doc. 76, Decl. at 2, 7-8).  Plaintiff denies that he attacked Sergeant Carmack with a knife.  (Id. at 2, 9).  Plaintiff further states that he initially "complied with [Sergeant

2

Carmack] until he hit [Plaintiff] upside the head with his weapon." (Id. at 7). In Plaintiff's statement of undisputed facts, he contends that, at the time of the incident, he was "legally inside the family residence and was not trespassing." (Doc. 76, "Statement of Undisputed Facts" ¶ 16).

The following facts are set forth by Defendant in affidavits, Plaintiff's deposition testimony, and other discovery responses. Sergeant Carmack served as a courtesy security officer at M-Street Apartments, located at 950 Marietta Street, Atlanta, Georgia 30318, in exchange for reduced rent. (Doc. 85, Carmack Aff. ¶ 3). Sergeant Carmack offered general security services as needed and spoke with the property manager almost daily regarding the apartments. (Id. ¶¶ 4-5).

On May 7, 2008, a maintenance worker called the property manager, Amanda Katherine Winston, and told her that Plaintiff had attacked a tenant, Kassandra Norman. (Winston Aff. ¶ 15). Ms. Winston called the police. (Id. ¶ 16). Cedric Scott, a maintenance worker at the apartments, states that he witnessed the attack and pulled Plaintiff away from Ms. Norman. (Scott Aff. ¶¶ 3-4). Plaintiff fled the scene. (Id. ¶ 5). Earlier, Sergeant Carmack heard a commotion, and when he and Ms. Winston arrived on the scene, they noticed that Mr. Scott and Randy Washington, another maintenance worker, were present, along with Ms. Norman, whose shirt was

3

torn, and her two young children, who were visibly shaken by the incident. (Carmack Aff. ¶¶ 6-9; Winston Aff. ¶¶ 17-19). Plaintiff admits that he attacked Ms. Norman in the presence of their children. (Doc. 82, Ex. A at 5). Sometime later, the Atlanta Police Department arrived to investigate the matter and instructed everyone present to immediately notify them if Plaintiff was seen on the property again. (Carmack Aff. ¶¶ 10-11, Winston Aff. ¶¶ 20-21).

After this attack, Sergeant Carmack understood that the Atlanta Police Department considered Plaintiff to be a violent threat to Ms. Norman and her children and that, if seen again, Plaintiff should immediately be placed under arrest. (Carmack Aff. ¶ 12). Sergeant Carmack further believed that Plaintiff was not a tenant, was not authorized to live or stay in Ms. Norman's apartment, and would be considered a trespasser if later found on the property. (Id. ¶ 13). Based on Ms. Norman's representation to Ms. Winston that Plaintiff would not be living in her apartment, he was not included on the lease or noted as an occupant, as was required by the owner's policy for any adult living in the apartment. (Winston Aff. ¶¶ 6-10). Additionally, on the day of the attack, Ms. Norman obtained a restraining order against Plaintiff. (Doc. 82, Ex. A at 6, Ex. C). Ms. Norman telephoned the leasing office the next day to

4

inform them of the restraining order and also that she and her children would be leaving the apartments due to fear of Plaintiff.  (Winston Aff. ¶ 25).

On May 8, 2009, Plaintiff returned and gained access to Ms. Norman's apartment.  (Pl. Dep. at 41-42).  While in the apartment, Plaintiff became intoxicated, having consumed, within a five-hour period, a "smoothie with some alcohol in it," five beers, and half of a bottle of Hennessy.  (Id. at 42, 46-47,49-51).  Plaintiff awoke the next day, after about five hours of sleep, consumed seven more beers and the rest of the Hennessy, and was "real drunk."  (Id. at 50-52, 54).  Plaintiff also took a pain killer (Vicodin) while he was drinking.  (Id. at 100-01).  Plaintiff explained that drinking alcohol causes him "to get angry."  (Id. at 101).

On that same day, Mr. Scott saw Plaintiff in and around Ms. Norman's apartment building and informed both the management office and Sergeant Carmack.  (Scott Aff. ¶¶ 9-11).  Sergeant Carmack immediately grabbed his Sheriff's badge and service weapon and went to meet Mr. Scott at Ms. Winston's apartment building.  (Carmack Aff. ¶ 15).  On his way to meet Mr. Scott, Sergeant Carmack spoke with Ms. Winston, who told him about the restraining order and that Plaintiff was trespassing.  (Id. ¶ 16, Winston Aff. ¶ 27).

5

On arrival at Ms. Norman's apartment, both Sergeant Carmack and Mr. Scott noticed that someone had forcibly entered the apartment by kicking in the door. (Carmack Aff. ¶ 18, Scott Aff. ¶¶ 12, 14).  While Mr. Scott stood in the doorway, Sergeant Carmack drew his weapon, opened the door, saw Plaintiff inside the apartment, displayed his badge, and identified himself as a Fulton County Sheriff. (Carmack Aff. ¶¶ 19-23, Scott Aff. ¶¶ 17-18).  Sergeant Carmack asked why Plaintiff was in the apartment, telling him that he was not supposed to be there, and instructed him to get on the ground.  (Carmack Aff. ¶¶ 24-25, Scott Aff. ¶¶ 19-20).  Plaintiff complied and laid on his stomach behind the kitchen counter, and Sergeant Carmack put a handcuff on one of his wrists.  (Carmack Aff. ¶¶ 26-27, Scott Aff. ¶¶ 21-22).  Plaintiff then began to taunt Sergeant Carmack, asking "you gonna shoot me?" (Carmack Aff. ¶ 28, Scott Aff. ¶ 23).  In order to handcuff Plaintiff's other wrist, Sergeant Carmack placed his weapon on the inside, lower level of the kitchen counter, away from Plaintiff's view and reach.  (Carmack Aff. ¶ 29, Scott Aff. ¶ 24).

Before Sergeant Carmack could secure the other handcuff, Plaintiff rolled over, tried to pull Sergeant Carmack down, and then struck and attacked Sergeant Carmack. (Carmack Aff. ¶ 30, Scott Aff. ¶ 25).  Plaintiff fought Sergeant Carmack across the living room of the apartment, and Sergeant Carmack attempted to return to the kitchen

6

to secure his weapon.  (Carmack Aff. ¶¶ 31-32, Scott Aff. ¶¶ 26-27).  Plaintiff followed Sergeant Carmack and, once Sergeant Carmack had retrieved his weapon, Plaintiff grabbed him from behind and a struggle ensued.  (Carmack Aff. ¶¶ 33-35, Scott Aff. ¶¶ 28-30).  As they struggled, Plaintiff tried to grab Sergeant Carmack's weapon, and Sergeant Carmack strained to keep the weapon out of his reach and escape his grasp.  (Carmack Aff. ¶ 36, Scott Aff. ¶ 31).  Sergeant Carmack eventually backed Plaintiff into the bedroom and pinned his back against the wall.  (Carmack Aff. ¶ 37, Scott Aff. ¶ 32).

During the struggle, Sergeant Carmack had instructed Plaintiff at least six or seven times to stop fighting and allow him to secure the second handcuff.  (Carmack Aff. ¶ 38, Scott Aff. ¶ 33).  Plaintiff refused to comply with each order, despite Sergeant Carmack's warnings that failure to do so would force him to shoot Plaintiff. (Id.).  Sergeant Carmack had Plaintiff pinned against the wall for no less than forty-five (45) seconds, during which time Plaintiff would not release Sergeant Carmack or cease his attempts to gain control of the weapon.  (Carmack Aff. ¶ 39, Scott Aff. ¶ 34).  After Plaintiff ignored multiple warnings, Sergeant Carmack tried to fire his weapon at Plaintiff's foot.  (Carmack Aff. ¶ 40, Scott Aff. ¶ 35).  The first shot failed to fire because the safety was engaged.  (Carmack Aff. ¶ 41, Scott Aff. ¶ 36).  As Plaintiff

7

maintained his grip on Sergeant Carmack, he fired a second shot, which hit Plaintiff's foot.  (Carmack Aff. ¶¶ 41-42, Scott Aff. ¶¶ 36-37).  Sergeant Carmack, who feared for his life, believed he had no choice but to shoot Plaintiff in the foot to stop his assault and resisting arrest.  (Carmack Aff. ¶ 49).

Even after being shot, Plaintiff refused to release Sergeant Carmack and continued to struggle.  (Carmack Aff. ¶ 43, Scott Aff. ¶ 38).  Mr. Washington and another maintenance worker, James Smith, arrived at the apartment and, together with Mr. Scott, physically removed Plaintiff from Sergeant Carmack, held Plaintiff on the floor, secured the second handcuff, and asked Plaintiff to remain seated until the police arrived.  (Carmack Aff. ¶¶ 44-45, Scott Aff. ¶¶ 39-40, 42).  Sergeant Carmack left the bedroom to assess his injuries and wait for the police, and Plaintiff paced the apartment stating that he was going to "fuck up" Sergeant Carmack.  (Carmack Aff. ¶ 46, Scott Aff. ¶ 43).

Plaintiff does not dispute that he engaged in a physical altercation with Sergeant Carmack.  (Doc. 82, Ex. A at 3-4).  Plaintiff testified that he hit Sergeant Carmack in the forehead with the handcuffs.  (Pl. Dep. at 75).  Plaintiff then hit Sergeant Carmack "three or four times in his back" and "grabbed him . . . [f]rom the back."  (Id. at 76-77).

8

Plaintiff was ultimately incarcerated at the Fulton County Jail for his actions on May 7 and 9, 2008, and was indicted for aggravated assault, terroristic threats, stalking, cruelty to children in the third degree, burglary, aggravated assault on a peace officer, obstruction of a law enforcement officer, removal of a weapon from a public official, and simple battery against a police officer.  (Carmack Aff. ¶ 50; Doc. 82, Ex. B). Sergeant Carmack has been on duty at the Fulton County Jail while Plaintiff has been incarcerated there.  (Carmack Aff. ¶ 52).  Sergeant Carmack denies ever having threatened or addressed Plaintiff concerning the multiple legal actions filed against him.  (Id. ¶ 53).  Sergeant Carmack further denies engaging in any activity or exhibiting any behavior designed to dissuade Plaintiff from initiating or continuing prosecution of any such actions.  (Id. ¶ 54).  In fact, Sergeant Carmack states that he has taken steps to avoid any contact with Plaintiff.  (Id. at 55).

During his deposition, Plaintiff stated that the first alleged incidence of retaliation occurred in September or October of 2008, when Sergeant Carmack taunted him by saying "go ahead, nigger, take that time and go on down the road."  (Pl. Dep. at 104-05, 111).  Plaintiff alleges that Sergeant Carmack told the officer escorting Plaintiff to medical "leave that shit on the street."  (Id. at 105).  According to Plaintiff, the second incident occurred on December 4, 2008, when Sergeant Carmack

9

approached his cell and said "how that foot feeling, nigger?" (<u>Id.</u> at 110).  Plaintiff did

not  testify  that  Sergeant  Carmack  made  any  threats  of  physical  violence  or

consequence or any other statements concerning his lawsuits.  (<u>Id.</u> at 104-14).

In  the  declaration  contained  within  Plaintiff's  "Motion  in  Opposition  to

Defendant's Motion for Summary Judgment," he states that Mr. Scott did not witness

his altercation with his wife.  (Doc. 93 at 2).  Plaintiff further accuses Mr. Scott and

Sergeant Carmack of lying about the events of May 9, 2008.  (<u>Id.</u> at 3-4).  Plaintiff

admits that he was not listed on the lease for Ms. Norman's apartment, but contends

that he was staying there temporarily.  (<u>Id.</u> at 5).

**B.      Parties' Arguments**

In Plaintiff's motion for summary judgment, he argues, in relevant part, that

Sergeant Carmack used excessive deadly force during Plaintiff's arrest in violation of

the Fourth Amendment.  (Doc. 76, brief ¶ V).  Specifically, Plaintiff contends that he

was "unarmed and posed no life threatening action toward [Sergeant Carmack] except

in self defense," when Sergeant Carmack shot him in his home.  (<u>Id.</u>).  Plaintiff does

not discuss his First Amendment retaliation claim.

Sergeant Carmack responds that Plaintiff's "unsupported conclusory statements"

do not satisfy his burden of proof, and, in any event, his testimony is not credible

because he was heavily intoxicated during the relevant time period. (Doc. 87 at 1, 3-4, 13-14). Sergeant Carmack further argues that his use of force was reasonable, in light of the severity of Plaintiff's crimes, his threat to the safety of others, and his resisting arrest. (Id. at 7-12). Lastly, Sergeant Carmack maintains that Plaintiff's motion is due to be denied because it is procedurally deficient. (Id. at 14-15).

In Sergeant Carmack's motion for summary judgment, he argues that his use of force was reasonable because: (1) Plaintiff's crimes were significantly severe; (2) Plaintiff posed a serious risk to the safety of Ms. Norman and her children; (3) Plaintiff was resisting arrest; and (4) the Fulton County Sheriff's Department's Use of Force Review Board determined that Sergeant Carmack's use of force was justifiable. (Doc. 82, brief at 11-16). As to Plaintiff's retaliation claim, Sergeant Carmack argues that his alleged taunting of Plaintiff would not deter a person of ordinary fitness from engaging in protected conduct. (Id. at 17-20). Finally, Sergeant Carmack asserts that he is entitled to qualified immunity. (Id. at 20-25).

Plaintiff responds that Sergeant Carmack's use of force was unreasonable because: (1) Plaintiff's crime "was no more than a misdemeanor"; (2) Plaintiff was home alone and thus, posed no threat to anyone; and (3) Plaintiff had the right to resist arrest because Sergeant Carmack had kicked in his door. (Doc. 93, brief). Sergeant

11

Carmack replies, in part, that Plaintiff has failed to present evidence demonstrating a genuine issue of material fact.  (Doc. 95 at 6-10).  Sergeant Carmack also asserts that he is entitled to summary judgment on Plaintiff's retaliation claim because Plaintiff made no argument in support of that claim.  (Id. at 11-12).

## C.   <u>Summary Judgment Standard</u>

Summary judgment is appropriate "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c)(2).  The party seeking summary judgment bears the initial burden of demonstrating that no dispute as to any material fact exists.  <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323 (1986).  The moving party's burden may be discharged by "'showing' – that is, pointing out to the district court – that there is an absence of evidence to support [an essential element of] the nonmoving party's case." <u>Id.</u> at 325. In determining whether the moving party has met this burden, the district court must "view the evidence and all factual inferences . . . in the light most favorable to the party opposing the motion." <u>Burton v. City of Belle Glade,</u> 178 F.3d 1175, 1187 (11th Cir. 1999) (internal quotation omitted).

AO 72A
(Rev.8/82)

Once the moving party has adequately supported its motion, the nonmovant then has the burden of showing that summary judgment is improper by coming forward with specific facts showing a genuine dispute.  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).  The nonmovant may not rest upon mere allegations or denials contained in his pleadings.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986).  Additionally, "[t]he mere existence of a scintilla of evidence in support of the [nonmovant's] position" is insufficient to defeat summary judgment. Id. at 252.  Rather, the court must determine "whether reasonable jurors could find by a preponderance of the evidence that the plaintiff is entitled to a verdict."  Id.

## D.    Excessive Force

"The Fourth Amendment's freedom from unreasonable searches and seizures encompasses the plain right to be free from the use of excessive force in the course of an arrest.  The question is whether [the police officer] behaved reasonably in the light of the circumstances before him."  McCormick v. City of Fort Lauderdale, 333 F.3d 1234, 1244 (11th Cir. 2003).  The force used by the police officer must be "reasonably proportionate to the need for that force," which is measured by (1) the severity of the crime at issue, (2) whether the suspect poses an immediate threat to the safety of the officers or others, and (3) whether he is actively resisting arrest or attempting to evade

13

arrest by flight.  Id.  "[T]he right to make an arrest or investigatory stop necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it."  Id.  The use of deadly force to prevent a suspect from fleeing is warranted only if the officer: (1) has probable cause to believe that the suspect poses a threat of serious physical harm, either to the officer or to others, or he committed a crime involving the infliction or threatened infliction of serious physical harm; (2) reasonably believes that the use of deadly force is necessary to prevent escape; and (3) has given some warning about the possible use of deadly force, if feasible.  Tennessee v. Garner, 471 U.S. 1, 11-12 (1985).

Plaintiff does not dispute that he fought Sergeant Carmack and struggled over the officer's weapon.  (Doc. 82, Ex. A at 3-4; Pl. Dep. at 75-77).  Sergeant Carmack shot Plaintiff in the foot when he was otherwise unable to restrain Plaintiff, who had admittedly hit Sergeant Carmack in the forehead with the handcuffs.  (Carmack Aff. ¶¶ 30-42, Scott Aff. ¶¶ 25-37, Pl. Dep. at 75).  At the time of the incident, Sergeant Carmack understood that Ms. Norman had obtained a restraining order against Plaintiff, who was not supposed to be in the apartment.  (Carmack Aff. ¶¶ 6-13, 16).  Plaintiff admits that he had an altercation with his wife the day before.  (Doc. 82, Ex. A at 5).  The crimes for which Plaintiff was ultimately indicted (aggravated assault,

14

terroristic threats, stalking, cruelty to children in the third degree, burglary, aggravated assault on a peace officer, obstruction of a law enforcement officer, removal of a weapon from a public official, and simple battery against a police officer) were very serious. Sergeant Carmack gave Plaintiff several warnings before shooting him in the foot. (Carmack Aff. ¶¶ 38, 40, Scott Aff. ¶¶ 33, 35). Further, the struggle did not end after the shooting, and Plaintiff was subdued only after assistance from maintenance workers. (Carmack Aff. ¶¶ 43-45, Scott Aff. ¶¶ 38-40, ).

Plaintiff's main dispute with Sergeant Carmack's and Mr. Scott's description of the May 9, 2008 incident concerns whether he was legally in Ms. Norman's apartment and whether Sergeant Carmack forcibly entered the apartment or identified himself as an officer. Plaintiff's only evidence, however, is his own self-serving statements. Given that Plaintiff has admitted to being heavily intoxicated at the time of the incident, this evidence is insufficient to create a genuine issue of material fact to survive summary judgment. See Anderson, 477 U.S. at 249-50 (evidence that is "merely colorable" or is "not significantly probative" does not create a genuine issue for trial); Ellis v. England, 432 F.3d 1321, 1326 (11th Cir. 2005) ("unsupported factual allegations are legally insufficient to defeat a summary judgment motion"); Smith v. Federal Express Corp., 191 F. App'x 852, 855 (11th Cir. 2006) (concluding that

15

plaintiff's "own self-serving statements" unsupported by other evidence could not defeat defendant's summary judgment motion) (unpublished opinion).   Sergeant Carmack's fight with Plaintiff and decision to shoot him in the foot was objectively reasonable under the circumstances, as Plaintiff actively resisted arrest and posed a threat of serious physical harm to the officer and the maintenance workers.   Therefore, the Court finds that Sergeant Carmack responded within the confines of Plaintiff's civil rights.

**E.**   **Retaliation**

The First Amendment protects the rights to freedom of speech and "to petition the Government for a redress of grievances."   U.S. Const. amend. I.   A First Amendment retaliation claim has three elements: (1) the prisoner's "speech or act was constitutionally protected"; (2) "the defendant's retaliatory conduct adversely affected the protected speech"; and (3) "there is a causal connection between the retaliatory actions and the adverse effect on speech."   Douglas v. Yates, 535 F.3d 1316, 1321 (11th Cir. 2008).   The Eleventh Circuit has adopted an objective test to determine whether there has been an adverse affect.   Bennett v. Hendrix, 423 F.3d 1247, 1251 (11th Cir. 2005).   Under this test, "a plaintiff suffers adverse action if the defendant's allegedly retaliatory conduct would likely deter a person of ordinary firmness from the

16

exercise of First Amendment rights." <u>Id.</u> at 1250.  As such, a plaintiff "must show that the defendants' conduct resulted in something more than a de minimis inconvenience to the exercise of [his] First Amendment rights."  <u>Bethel v. Town of Loxley</u>, 221 F. App'x 812, 813 (11th Cir. 2006) (unpublished opinion).

Here, Plaintiff has not established the second element of a First Amendment retaliation claim.  Plaintiff alleges only that, in response to the lawsuits Plaintiff filed against him, Sergeant Carmack taunted him on two occasions.  (Pl. Dep. at 104-14).  After these alleged taunting incidents, Plaintiff continued to prosecute this action, filing numerous pleadings.  Although not dispositive, Plaintiff's response "provides some evidence of the tendency of [Sergeant Carmack's] conduct to chill First Amendment activity." <u>Bethel</u>, 221 F. App'x at 813.  Moreover, "[n]egative statements in general made by a defendant without threat of physical violence or any other consequence would not likely deter a person of 'ordinary firmness' from exercising his rights." <u>Henderson v. Philman</u>, No. 4:06-cv-00511-MP-AK, 2008 WL 5263557, at *5 (N.D. Fla. Dec. 17, 2008).  Plaintiff did not testify that Sergeant Carmack made any threats of physical violence or consequence.  (Pl. Dep. at 104-14).  Accordingly, Plaintiff cannot show that Sergeant Carmack's alleged taunting would deter a person

of ordinary firmness  from exercising his First Amendment rights, and thus, Sergeant Carmack is entitled to summary judgment on this claim.

## II.  MOTIONS TO AMEND COMPLAINT

Plaintiff has filed an amended complaint, adding as defendants the City of Atlanta, Fulton County, and City of Atlanta police officers Andrew Thompson and T.D. Peek.  (Doc. 77).  Plaintiff alleges that the officers' "unreasonable search and unlawful entry of Plaintiff's home and an unreasonable seizure of his person" violated his Fourth Amendment rights.  (Id. at 11).  Plaintiff further contends that the City of Atlanta is responsible for the actions of its officers, and Fulton County is liable for Sergeant Carmack's actions.  (Id. at 11-16).  Finally, Plaintiff asserts state law claims against the defendants.  (Id. at 16-20).

Sergeant Carmack objected to the amendment, which the Court construed as a motion for leave to amend, arguing that the motion fails to comply with Federal Rule of Civil Procedure 7(b)(1)(B)-(b)(1)(C) because Plaintiff did not state the relief sought or set forth any grounds for seeking leave to amend.  (Doc. 79 at 2).  Sergeant Carmack also complains that the motion fails to comply with Local Rule 7.1(A) because Plaintiff did not submit a memorandum of law in support of his request to amend.  (Id. at 2-3).

18

In response, Plaintiff resubmitted his amended complaint with an attached motion seeking leave to file the amendment.  (Doc. 92).  The one-page motion states only that Plaintiff seeks leave to amend his complaint to add "constitutional violation and pendant state law against" defendants.  (Id.).

Sergeant Carmack replies that Plaintiff's second motion for leave to amend should be denied because it is still procedurally deficient.  (Doc. 94 at 2).  Sergeant Carmack also argues that Plaintiff's motion to amend was filed in bad faith and contains allegations for which Plaintiff has no evidentiary support.  (Id. at 3-4). Sergeant Carmack asserts that, if the amendment is allowed, it will create undue delay and prejudice because additional discovery, including a second deposition of Plaintiff, will be necessary to address the new claims raised against him and the four new defendants.  (Id. at 4-5).

Leave to amend a complaint should be freely given when justice so requires. See Fed.R.Civ.P. 15(a).  However, a motion to amend may be denied where there is "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc." Foman v. Davis, 371 U.S. 178, 182 (1962).  The United States Court of Appeals for

19

the Eleventh Circuit has upheld a district court's denial of a motion to amend for undue delay where the motion was filed after the close of discovery and filing of defendant's summary judgment motion and where "the basic facts giving rise" to the new claim presented in the proposed amendment were available when a previous amendment was filed. Jameson v. Arrow Co., 75 F.3d 1528, 1535 (11th Cir. 1996).

Plaintiff filed this action on October 16, 2008. (Doc. 1). Discovery closed on October 6, 2009. (Doc. 33 at 1). The Court reopened discovery until February 19, 2010, for the limited purpose of taking Sergeant Carmack's deposition. (Doc. 62). On April 2, 2010, Plaintiff simultaneously filed his motion for summary judgment and amended complaint. (Docs. 76-77). Review of Plaintiff's prior amendments to his complaint (Docs. 5, 8) reveal that the facts alleged in his current motions to amend were available to him more than a year before he filed them. Accordingly, Plaintiff's motions to amend (Docs. 77, 92) are denied for undue delay.

### III.  MOTION FOR PRETRIAL CONFERENCE

Plaintiff requests that this Court schedule a pretrial conference. (Doc. 90). Because the Court is granting summary judgment to Sergeant Carmack, this motion is denied as moot.

## IV.  CONCLUSION

For the reasons set forth above, **IT IS HEREBY ORDERED** that Plaintiff's

motions for summary judgment (Doc. 76), leave to file an amended complaint (Docs.

77, 92), and pretrial conference (Doc. 90) are **DENIED**.

**IT IS FURTHER ORDERED** that Defendant's motion for summary judgment

(Doc. 82) is **GRANTED**.

The Clerk of Court is **HEREBY DIRECTED** to close this case.


**IT IS SO ORDERED** this <u>2nd</u> day of June, 2010.


<u>/s/ Charles A. Pannell, Jr.</u>
CHARLES A. PANNELL, JR.
UNITED STATES DISTRICT JUDGE

21